# THE PEOPLE *v.* THE SAN FRANCISCO SAVINGS UNION.

ASSESSMENT OF PROPERTY FOR TAXES.— If, in the original assessment roll of property, figures are placed by the Assessor in the column headed "Valuation," without anything to indicate whether the figures represent eagles, dollars, or cents, the assessment is void, and the people cannot recover a judgment for the tax.

WHEN ASSESSOR'S DUTIES CEASE.—When the Assessor has completed his assessment roll and delivered it to the Clerk of the Board of Supervisors, his functions cease.

DUPLICATE ASSESSMENT ROLL.—If the Assessor in his assessment roll does not fix the valuation of property by marks in the column of valuation, showing whether the figures indicate dollars, cents, or eagles, the Auditor, when he carries out the tax in the duplicate, cannot supply the defect.

ASSESSOR MUST MAKE THE VALUATION OF PROPERTY.—A valuation by the Assessor is essential to the validity of a property tax, and neither the Legislature nor the Auditor can make the valuation if the assessment is defective in this particular.

PAROL TESTIMONY TO EXPLAIN ASSESSMENT ROLL.—Independent of a statute authorizing such evidence, parol testimony of the Assessor cannot be received to show what the figures in the column of valuation were intended to represent.

EVIDENCE OF ASSESSMENT.—The assessment roll, when completed and certified by the Assessor to the Board of Supervisors, is the only evidence of his acts and intentions.

ACT OF 1864 LEGALIZING ASSESSMENTS.—The Act of April 4th, 1864, legalizing the assessments of property made in 1862 and 1863, does not cure the defect of a want of valuation by the Assessor of property assessed during those years.

APPEAL from the District Court, Fifteenth Judicial District, City and County of San Francisco.

This action was brought to recover judgment for two thousand one hundred and forty dollars and sixty-eight cents, for a tax alleged to have been assessed in 1863, upon money at interest secured by mortgage. On the trial the plaintiff offered in evidence that part of the duplicate assessment roll for the City and County of San Francisco for the year 1863, which reads as follows :

Statement of Facts.

## PERSONAL PROPERTY. FISCAL YEAR 1863–64.

| REFERENCE BOOK. | NAMES OF OWNERS. | RESIDENCE OR PLACE OF BUSINESS. | DESCRIPTION OF PROPERTY. This property is assessed to the parties listed, and to all owners and claimants, known or unknown; and to all owners and claimants of any interest, present or future therein, or any lien upon the same. | Valuation. | State Tax, 90 cts. | General Fund, 42½ cts. | School Fund, 20 cts. | Corporation Debt Fund, 45 cts. | Street Light Fund, 7½ cts. | Interest Tax Railroad, 5 cts. | Total Tax, $2 10 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | San Francisco Savings Union. | | Money at interest secured by Mortgage. | 101,937 18 | 917 42 | 433 21 | 203 86 | 458 69 | 76 46 | 57 00 | 2,140 68 107 03 50 2,248 21 |

The duplicate assessment roll was certified to by the Auditor. The defendant, by his attorney, objected to the evidence, because there was no certificate of the Assessor attached thereto, nor any evidence that the property was assessed as required by law, or that the Assessor delivered the assessment roll to the Clerk of the Board of Equalization. Thereupon the plaintiff offered in evidence the original assessment roll, certified by the Assessor and Clerk of the Board of Equalization, and proposed to read therefrom the following extract :

| NAMES OF OWNERS. | RESIDENCE OR PLACE OF BUSINESS. | DESCRIPTION OF PROPERTY. This property is assessed to the parties listed, and to all owners and claimants, known or unknown; and to all owners or claimants of any interest, present or future therein, or any lien upon the same. | VALUATION. |
|---|---|---|---|
| San Francisco Savings Union. | | Money at interest secured by Mortgage. | 101,937 18 |

The defendant objected to the evidence, because no valuation was affixed to the property. The Court permitted the evidence to be introduced, subject to the objections, and the defendant excepted.

The Assessor then testified that the figures in the assessment roll were intended to represent dollars and cents. To the admissibility of that testimony defendant excepted on the ground that the same was irrelevant, incompetent, and immaterial. The Court admitted the testimony to be given, reserving the question of its admissibility and effect until the argument of the cause.

Judgment was for the defendant in the Court below, and plaintiff appealed.

*Nathan Porter, District Attorney, Delos Lake,* and *T. I. Bergin,* for Appellants, argued that the rule on the subject of parol evidence was foreign to this case, and applied only to written contracts between parties, and that the power of the Legislature to cure all infirmities in the assessment of taxes

was plenary; and cited on the last point *High* v. *Shoemaker*, 22 Cal. 369; *The People* v. *McEwen*, 23 Cal. 57; *The People* v. *Todd*, 23 Cal. 183; *Guy* v. *Washburn*, 23 Cal. 115; and *The People* v. *Holliday*, 25 Cal. 300.   They also argued that the duplicate assessment roll was the final act in the ascertainment of the amount of the taxes and public revenues, and was conclusive upon the taxpayer in absence of any appeal therefrom to the Board of Equalization; and cited *Williams* v. *Holden*, 4 Wend. 223; *Merrill* v. *Gorham*, 6 Cal. 41; and *Hemmenway* v. *Inhabitants of Machias*, 33 Me. 445.

*Campbell, Fox & Campbell*, for Respondent, argued that the barren figures in the column of valuation, without anything to indicate whether they stood for dollars or cents, did not constitute an assessment; and cited *Hurlburt* v. *Butenop*, 27 Cal. 59; and that an intention to fix a valuation to an assessment did not fix a valuation.   They also contended that the Act of 1863–4, p. 349, did not cure a want of valuation in an assessment.

By the Court, SAWYER, J.:

We are unable to distinguish this case from *Hurlburt* v. *Butenop*, 27 Cal. 50, *Lawrence* v. *Fast*, 20 Ill. 341, *Lane* v. *Bommelmann*, 21 Ill. 147, and *Eppinger* v. *Kirby*, 23 Ill. 523, and those cases are conceded to be correctly decided.   It is true that plaintiffs are seeking a judgment for a certain amount claimed to be due for taxes, and not seeking to sustain a tax deed.   But it is necessary that there should have been a tax assessed, and that the amount should be ascertained, otherwise, there is no basis for a judgment to rest upon. There were judgments in the cases cited from the Illinois Reports. but the judgments followed the assessment rolls which were introduced in evidence to establish the tax, and were, therefore, as vague and uncertain as the rolls themselves. In this case, the existence of the tax is put in issue by the pleadings, and to entitle plaintiffs to recover, it is necessary

for them to show that a valid tax has been levied.   The evidence, and the only legal evidence, to establish this fact, unless the curative Act of April 4, 1864, authorizes the introduction of other evidence, is the official assessment roll. Looking to that alone, we can no more say from an inspection of the roll that there is a valuation of the property expressed, or that the amount of the tax is designated, than we could upon a similar examination for the purpose of ascertaining the same fact with the view to determining the validity of a tax deed executed under a sale based upon such an assessment, without a judgment.   The assessment roll would, upon its face, present the same defect in the former case as in the latter; and if it did not speak in intelligible language in the one case, it certainly would not in the other.   In the assessment roll, in the column headed "valuation," there is nothing whatever to indicate what the figures are intended to represent, and, under the authorities cited, we are not authorized to say they mean dollars.   They are simply numerals—"barren figures"—that are as often employed to indicate anything else that may be numbered as dollars, or, if money is indicated, the denominations may be either eagles, dollars, cents or mills.   If a plaintiff in a suit to recover the value of property converted should allege the value of such property to be 4250, and a jury should return a verdict for the plaintiff, assessing the damages at 4250, and the judgment following the allegations of the complaint and verdict should be for 4250, without anything to indicate what the 4250 were intended to indicate, it would scarcely be claimed that the judgment could be enforced.   So also, if, in a suit on the judgment, the judgment roll should be introduced in evidence, it would scarcely be contended that parol evidence would be admitted to show that the figures 4250 were intended to designate dollars.   Take, for example, a promissory note in the following form.   "For value received, two —— after date, I promise to pay John Smith or order, two hundred and fifty-six —— with interest."   Would the Court be authorized to presume that the word years was intended to be understood

after the word " two," and the word dollars after the words
" two hundred fifty-six." Or could the instrument be helped
out by parol proof? We think not. There would be an
incurable patent ambiguity. (1 Green. Ev. 300.) If it be
conceded, then, that the assessment is so defective that the
Court cannot determine what is intended for the purpose of
sustaining a tax deed in the cases cited, it follows necessarily
that it is insufficient as evidence to authorize a judgment.

### *Duplicate assessment roll.*

It is insisted, however, by the appellant that the assessment
roll returned by the Assessor to the Board of Supervisors is
not the complete roll; that the duplicate is the one to be
looked to for the purpose of ascertaining the tax, and that on
reference to the duplicate in this instance by aid of the tax
carried out in the subsequent columns, that which was before
vague and indefinite is rendered sufficiently certain. Conced-
ing that, in the figures carrying out the tax in subsequent col-
umns, it is sufficiently indicated that dollars and cents are
intended, (but this is by no means clear,) this does not cure
the defect. The Assessor's list only contains names of the
owners, and descriptions of the property assessed, and the
valuation. When his roll embracing these particulars is com-
pleted it is certified by him and delivered to the Clerk of the
Board of Supervisors, and thereupon his functions cease. This
is the assessment roll which is the basis of all subsequent pro-
ceedings. The Board of Supervisors then, in the mode pre-
scribed by law, equalizes the valuations, and the Clerk of the
Board enters upon it all the changes and corrections made by
the Board; after which the assessment roll, so corrected, is
delivered by the Clerk to the Auditor, whose duty it is to add
up the columns of valuation, enter the totals upon the roll,
and deliver to the Tax Collector a copy of the corrected roll,
with the State, county and other taxes, and total of taxes car-
ried out in separate money columns. This is the duplicate.
The Auditor's duties in this respect are merely those of com-

18

putation of the percentage upon the valuation already fixed by the Assessor, as corrected by the Board of Supervisors, and carrying out the amount in separate columns in the roll. (Sec. 8, Rev. Laws.) He has no discretion. The duty of computation could as well be performed by any other person as by the Auditor. He must base his computation upon the record—the valuation furnished him. He must take the valuation as he finds it. He has no means of information as to the value of the property, which is not equally open to this Court. If no valuation is expressed, he has no authority to supply it. If he finds certain figures without any designation as to what they are intended to signify, he cannot give them an arbitrary signification; and if he assumes them to signify dollars, that assumption does not aid this Court in determining whether or not they were intended to designate dollars. In this case, neither in the original, nor duplicate, is there anything to indicate what the figures in the column headed "valuation" were *intended* to signify, and the Auditor was no more authorized to call them dollars than this Court would be. The duplicate, therefore, of itself affords no aid in the solution of the question. Section thirteen, Article XI, of the Constitution requires all property to be taxed in proportion to its value, to be ascertained as directed by law, and provides that Assessors shall be elected. A valuation is the very foundation of proceedings for apportioning and collecting a tax upon property. It is essential to the validity of a property tax. It was so held in *People* v. *Hastings*, 29 Cal. 449, and that the valuation must be made by the Assessor. If the Assessor has failed to make an intelligible valuation, that duty cannot be performed or the defects remedied by the Auditor. Nor can the Legislature make the valuation. Clearly, then, under the authorities cited, there is no valuation shown by the original assessment roll or the duplicate—for the same defect exists in both. They, therefore, afford no evidence of a tax legally levied; and independent of any statute authorizing such evidence, we are clearly of the opinion that the parol testimony of the Assessor to show what he intended to express by the figures in the

assessment roll was incompetent.   The record—the assessment roll, when completed and certified to the Board of Supervisors, is the only evidence of his acts and intentions.

## Act of 1863–4 legalizing assessments.

On the 4th of April, 1864, an Act was passed in the words following : " SECTION 1. The assessments of taxes upon all property, real and personal, in the several counties of this State, whether for State, county or other purposes, made by the county, district or township Assessors thereof, for the revenue year commencing on the first Monday of March, A. D. 1862, and for the revenue year commencing on the first Monday of March, A. D. 1863, are hereby legalized and confirmed, and rendered binding and valid, both in law and equity, against the person and property assessed, and no want of description or indescription, or informality, or irregularity in the description of the property assessed upon the assessment roll, if it can be ascertained or proved by any proper and competent evidence what property is intended, shall invalidate the assessment, but the same shall be sufficient and be considered valid both in law and equity." (Laws 1863–4, p. 359.)

It is claimed that this Act cured the defect.  But we think not.   There was no intelligible valuation, and it is necessary to ascertain the value in order to determine the amount of the tax.   The Act in no way enables us to determine the value of the property, and consequently we cannot ascertain the amount of the tax.   The very essence of a valid apportionment of the tax is wanting.   The Legislature might perhaps have authorized the Assessor, even in the present stage of the record, to amend the assessment roll so as to show what he actually intended ; or, perhaps, have authorized the Assessor to testify upon the trial what he designed to express by the figures used.   But nothing of the kind has been done.   Where there is a defective description of the property taxed the law authorizes it to be shown by " proper and competent evidence," if it can be done, " what property is intended."   But

suppose this cannot be " ascertained or proved by any proper and competent evidence," will the tax still be valid ? Of course not. But the law limits this remedy to defective descriptions of the property, and does not purport to authorize the Assessor to state what his intention was in the use of certain figures for the purpose of remedying a defective valuation. Nor can it be said that the tax carried out by the Auditor, admitting that to be expressed with sufficient certainty, was adopted and legalized without reference to the valuation. That would be to levy an arbitrary tax without reference to value, and would be more objectionable, if possible, under the Constitution, than the assessment in question in *People* v. *Hastings*, before cited. We are satisfied that the Act in question does not reach the case. It follows that no legal tax against the defendant was shown by the evidence, and that there is no error in the judgment.

Judgment affirmed.