STATE, *EX RELATIONE* HAGOOD, v. THOMPSON.

1. Before real estate can become forfeited to the State under our statutes, the following facts must concur: first, the land must appear properly upon the tax duplicate assessed; second, there must be a failure to pay the taxes; third, the land must be exposed to sale under the regulations prescribed for the sale of delinquent lands; and, fourth, there must be a failure to sell for the want of bidders.

2. Under the assessment act of 1878 (16 *Stat.* 777), the board of assessors are required to assess the value of all real estate, "and certify their assessment back to the said auditor to be entered upon his duplicate." *Held,* that this required the board to certify in writing, and parol evidence by a clerk to the board, that he had made entry of the assessment by their direction upon the taxpayer's return was properly excluded, it not being the best evidence of their action.

3. The auditor's deed for delinquent land is *prima facie* evidence of good title under the express terms of section 116 of the act of 1874 (15 *Stat.* 772), but there being no such provision in the next succeeding section relating to forfeited lands, the court cannot supply it, and in such case the State must prove its title.

---

Before WALLACE, J., Richland, April, 1882.

Action by the State at the relation of Johnson Hagood as governor, and others constituting the commissioners of the sinking fund, against Ann F. Thompson. The opinion states the case.

*Mr. J. D. Pope,* for appellant.

*Mr. Wm. H. Lyles,* contra.

February 15th, 1883.  The opinion of the court was deliv-
ered by

MR. CHIEF JUSTICE SIMPSON.  This action was brought by
the plaintiffs, appellants, to recover a tract of land which, as com-
missioners of the sinking fund, they alleged they were entitled
to take possession of, because forfeited to the State for non-pay-
ment of taxes, having thereby become assets of the State in
charge of said sinking fund under the provisions of the act of
December 23d, 1879, the second section of which transferred all
such lands to said sinking fund commissioners.

Before real estate can become forfeited to the State under our
statutes, the following facts must concur: first, the land must
appear properly upon the tax duplicate assessed; second, there
must be a failure to pay the taxes; third, the land must' be
exposed to sale under the regulations prescribed for the sale of
delinquent lands; and, fourth, there must be a failure to sell for
the want of bidders.  The first link in the chain is the assess-
ment preliminary to being placed upon the tax duplicate by the
auditor.  This is regulated by act of assembly, approved Decem-
ber 29th, 1878, entitled "An act to further provide for the
assessment of real estate for the purposes of taxation."  16
*Stat.* 777.

That act provides that the county auditors in the several coun-
ties shall, before the time fixed for the assessment of property,
appoint for each township a board of assessors consisting of three
intelligent freeholders, who, after organizing by the election of
a chairman and taking the necessary oaths, shall constitute a
board of assessors for the purpose of assessing the value of real
estate in their township for the purposes of taxation.  The third
section of this act provides: "That before entering the value of
any real estate upon his duplicate, the county auditor shall sub-
mit a description of the same to the board of assessors appointed
as aforesaid, * * * and the said board shall thereupon,
without delay, assess the value of the same, and certify their

assessment back to the said auditor to be entered upon his dupli-cate."

The main question in this case arises under this act. The plaintiffs, without producing a certificate from the board of assessors that the property in question had been assessed by them, and by the authority of which the auditor had placed the land upon his tax duplicate, proposed to prove by Joseph Muller that he acted as clerk of the board of assessors, that the board of assessors assembled in the auditor's office in 1879, that the description of the property of the defendant was put before this board in the shape of an original return taken by the auditor, with the column for valuation left blank, that the valua-tion was then entered therein by the witness, in his hand-writing, but by the direction of the assessors; and that the paper so filled up by the witness was turned over to the auditor, who filed the same away, transferring the value so assessed to the duplicate lists. This testimony was objected to by defend-ant upon the ground that the valuation could be fixed alone by the board of assessors, and that the action of the board could not be proved by parol. The presiding judge sustained the objection and ruled the testimony inadmissible.

It was then urged by the plaintiffs that as, under the 116th section of the tax act of March, 1874, the deed of the county auditor for any real estate sold at delinquent land sale shall be *prima facie* evidence of a good title, so under the 117th section of the same act, where the land became forfeited to the State, the forfeiture carried with it a *prima facie* title to the State. As to this, the presiding judge held that as the words *prima facie,* which were found in section 116, as to the deed of the auditor for delinquent lands sold by him, did not appear in section 117 where forfeiture to the State took place, could not supply them by construction. He therefore overruled the position of the plaintiffs, holding that the *onus probandi* rested with the State to establish a good title.

The plaintiffs, therefore, determined to take a non-suit, with leave to set the same aside if so advised, which was ordered on motion of plaintiffs' attorneys. The plaintiffs then appealed

upon two grounds. First. "Because his Honor erred in holding that the assessment of defendant's property for taxation could only be proved by a written certificate signed by the assessors to comply with the provisions of the act of December 24th, 1878." Second. "Because his Honor erred in holding that while under the one hundred and sixteenth section of the act of 1874, the auditor's deed to the purchaser of real estate purchased at a delinquent land sale, shall be *prima facie* evidence of good title to the grantee, the same rule would not apply under the one hundred and seventeenth section of the same act, where the title passed to the State for the want of bidders at such sale."

We concur with the presiding judge, that the testimony of Muller was inadmissible. The act of 1878, *supra,* expressly provides that the assessment for taxation shall be made by the board of assessors, and that this board shall certify their assessment back to the auditor to be entered upon his duplicate. It not only directs the assessment to be made, but it specifies the mode by which that assessment is to be authenticated, upon which authentication the assessment is to be placed upon the tax duplicate, to wit, the certificate of the board. It was necessary, therefore, in this case for the plaintiffs to prove, as the first link in their chain of title, that the land in dispute had gone upon the tax duplicate in accordance with the regulations prescribed by the act. This they attempted to do by the introduction of Muller.

It is a general rule of evidence that the best evidence of which the fact in issue is susceptible must be offered to prove it. In the unavoidable absence of this, secondary evidence may be resorted to. The question here was, Had the board of assessors made and certified an assessment upon the real estate of the defendant so as to authorize the county auditor to place it upon the duplicate for taxation? Muller did not propose to prove that the board of assessors had certified their assessment back to the auditor as required by the act, but simply that he, as their clerk, had entered a valuation upon the original return, which paper had been handed to the auditor and by him filed away.

Inasmuch as the act of 1878 made the certificate of the

board a part of its duty in the assessment as authority for the auditor to enter the valuation upon his duplicate, the fact of that certificate was a necessary fact in the case, and under the general rule requiring the best evidence of which it was susceptible, the certificate itself should have been produced, or, if lost or destroyed, then secondary evidence of its existence and contents would have been admissible. As has already been said, the witness Muller was not offered to prove an assessment of the board authenticated by its certificate, or the contents of such certificate as a lost paper, but he was offered as an eye-witness to the proceeding of the board to prove its action. This, we think with the presiding judge, was incompetent. The board under the act is an organized body consisting of three members with a chairman. They are required by the terms of the act under which they are constituted to certify their assessments, and the best evidence of their action in this respect is their certificate made in some form in writing attesting their action as an organized body. *Dent* v. *Bryce,* 16 *S. C.* 1; *People* v. *S. F. Union,* 31 *Cal.* 132; *Blackw. Tax T.* 113. The testimony offered was foreign to this point. It was an effort to prove an assessment in a mode different from that prescribed by the act, and was properly excluded.

As to the second point, we also concur with the presiding judge. The General Assembly in its wisdom saw proper to make the deed of the auditor *prima facie* evidence of title as to delinquent lands sold by him in express terms as found in the one hundred and sixteenth section of the act of 1874. They also saw proper to leave those words out in the one hundred and seventeenth section, where the land was forfeited to the State for the want of bidders. We have the power to construe and interpret doubtful and analogous phrases or words in an instrument brought before us, so as to reach its true intent and meaning, but we have no power to interpolate or insert words not used; especially should we be restrained in a case like this, where the words in question are expressly incorporated in the one section and left out in the other. We must suppose that the legislature intended, for some good and sufficient reason, that the purchasers at delinquent land sales should stand *prima facie*

upon the deed of the auditor, while in the case of the stringent doctrine of forfeiture it was the intention that the State should be required to make out its case.

It is the judgment of this court that the order below be affirmed.